IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDUSKY WELLNESS CENTER, LLC,

          Plaintiff,          Case No. 3:12 CV 2257

   -vs-

                              O R D E R

WAGNER WELLNESS, INC., et a.,

          Defendant.

KATZ, J.

This matter is before the Court pursuant to Sandusky Wellness Center, LLC's motion (Doc. No. 47) to reconsider the Court's order (Doc. No. 42) denying its motion for class certification. Upon review, the motion for reconsideration is denied as moot given the two decisions from the United States Court of Appeals for the Sixth Circuit (Doc. Nos. 51, 52) vacating that same order.

     Defendant Wagner Wellness is a Florida corporation that engages in the business of selling vitamins and nutritional supplements with its principal place of business in Longwood, Florida. Wagner Wellness is owned by Robert and April Wagner and the business has no other employees. However, Mr. Wagner has stated that his son Chad occasionally assisted with the business by helping at an occasional meeting and by opening the door. The Wagners serve as both officers and shareholders of Wagner Wellness. Sandusky Wellness is an Ohio limited liability company located in Sandusky, Ohio, within the jurisdiction and venue of this Court.

     Sandusky Wellness alleged that the defendants violated the Telephone Consumer Protection Act of 1991 (TCPA), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, by sending an unsolicited advertisement, via facsimile, to promote their business and invite physicians to seminars discussing their products. The facsimile contained an "opt-out" statement which states: "To be removed from future facsimiles call 1-877-281-6342 and enter pin# 8283."

The record establishes that Wagner Wellness purchased on its corporate charge card a list of facsimile numbers from infoUSA.  Wagner Wellness directed infoUSA to send the facsimile list to Alert Solutions, Inc., doing business as BLI Messaging.  BLI then sent facsimiles to the people on the list provided by infoUSA.  Although the parties disputed Mr. Wagner's involvement with the facsimiles, they agreed that April Wagner played no role in the creation or distribution of the facsimiles which lead to the dismissal of the complaint against her.

Regarding Mr. Wagner's motion for summary judgment on the issue of personal liability, the Court denied the motion.  The Court noted that it did not express any opinion on whether Mr. Wagner violated the TCPA, or whether the "opt-language" of the facsimile in question was sufficient under the statute.  The Court's ruling was strictly limited to the question of whether Mr. Wagner could be held personally liable for any violations of the TCPA.  (Doc. Nos. 45, p. 6).

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless certain exceptions apply.  47 U.S.C. § 227(b)(1)(C).  The statute provides a private right of action to enforce its provisions.  A "person or entity may" bring "an action based on a violation" of the statute to:  1) "enjoin such violation"; 2) "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater"; or 3) "both such actions."  47 U.S.C. § 227(b)(3).  In addition, "[i]f the court finds that the defendant willfully or knowingly violated" the statute, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount" of the plaintiff's award for statutory or actual damages.  *Id*.

In enacting the TCPA, Congress noted "the proliferation of facsimile machines" in the business community had been "accompanied by explosive growth in unsolicited facsimile advertising, or 'junk fax.'" H.R. Rep. 102–317 at 10 (1991). Congress further stated that such advertising "is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id*. The recipient of the facsimile advertisements assumes both the cost associated with the use of the facsimile machine and the cost of the paper. In addition, when receiving the facsimile, it may require several minutes or more to process and print the advertisement. During that time, the facsimile machine is unable to process actual business communications. *Id*. at 25. Thus, the statute's legislative history indicates that the TCPA was intended to address the costs incurred by the owner of the facsimile machine and the facsimile machine owner's loss of the use of the machine.

Sandusky Wellness moved for class certification pursuant to Federal Rule of Civil Procedure 23. The proposed class is: "All persons who (1) on or after September 5, 2008, (2) were sent telephone facsimile messages inviting attendance at a Physicians Wellness and Weight Loss Program, and (3) which did not display a proper opt-out notice." (Doc. No. 33). The Defendants contended that the requirements of Rule 23 have not been satisfied.

Rule 23 allows Sandusky Wellness to pursue claims on behalf of a class of similarly situated individuals if it demonstrates that it is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To justify this "exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979), Sandusky Wellness must meet a series of conditions set forth in Rule 23 to ensure, first, that it is an appropriate representative for absent class members, and, second, that its claim is appropriate for classwide resolution. *See* Fed. R. Civ. P. 23.

Class-certification litigation is the process of determining whether a plaintiff can meet these conditions. The rule establishes four requirements:

> (1) the class [must be] so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). If a plaintiff does not satisfy each of these requirements, the class claim fails. If, however, a plaintiff shows that he is an appropriate representative within the meaning of Rule 23(a), the focus shifts to the case itself.

Under Rule 23(b), four types of lawsuits may proceed as class actions. Class resolution is appropriate when:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

>members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
>(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
>(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(1)–(3). If a plaintiff's claim does not fall into one of these categories, class certification is inappropriate, even if a plaintiff meets each of Rule 23(a)'s four threshold requirements.

Thus, a plaintiff must show that he meets all four Rule 23(a) criteria, and that the case falls into at least one of the four Rule 23(b) categories. If the plaintiff fails to satisfy any of these requirements, class certification is not appropriate.

This Court must conduct "a rigorous analysis," *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982), at "an early practicable time . . . [to] determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). In the class-certification context, courts are permitted to "probe behind the pleadings," *Falcon*, 457 U.S. at 160, and "touch[ ] aspects of the merits." *Dukes*, 131 S. Ct. at 2552.

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). *Dukes* clarified the scope of this inquiry. To satisfy Rule 23(a)(2), a plaintiff's "claims must depend upon a common contention— . . . . [which is] of such a

5

nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. The crucial inquiry, the Court explained, is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (internal quotation marks and citation omitted) (emphasis in original).

The Sixth Circuit's recent decision in *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, No. 13-2605, 2014 WL 3317736 (6th Cir. July 9, 2014), provides guidance regarding Sandusky Wellness's class certification motion. Lake City is a Pennsylvania-based corporation that distributes pipe-thread sealing tape. *American Copper*, 2014 WL 3317736, at *1. In February 2006, Lake City received an unsolicited fax from Business to Business Solutions (B2B), a "fax-blasting" company, advertising B2B's services. *Id*. Lake City's president, Jeffrey Meeder, responded to the advertisement. *Id*. B2B offered to transmit approximately 10,000 faxes on Lake City's behalf for $92. *Id*. Meeder accepted B2B's offer, and Lake City and B2B began drafting the Lake City advertisement. *Id*. After Meeder made revisions to a draft that a B2B representative had sent to him, the Lake City advertisement was finalized. *Id*. B2B subsequently transmitted thousands of unsolicited faxes in February 2006 that featured the Lake City advertisement. *Id*.

American Copper, an equipment wholesaler headquartered in Michigan, received the Lake City advertisement on a fax machine at its Traverse City location on February 20, 2006. *Id*. Lake City and American Copper had no preexisting business relationship, nor did Lake City obtain American Copper's permission before the advertisement was transmitted to American Copper. *Id*.

6

American Copper filed suit against Lake City and Meeder in December 2009. *Id*. Lake City and Meeder in turn filed a third-party complaint against B2B and others affiliated with B2B. *Id*. The district court entered a default judgment against the third-party defendants after they failed to appear or otherwise respond to the third-party complaint. *Id*.

After amending its complaint twice, American Copper moved for class certification in August 2011. *Id*. American Copper proposed the following class definition:

> All persons who were successfully sent a facsimile on February 20, 2006, February 21, 2006 or February 22, 2006 from "Lake City Industrial Products, Inc."; inquiring, "Sick And Tired of Thin, Low Quality Import Pipe Thread Sealing Tapes?"; stating "End the problems now with high quality, MADE IN U.S.A. 100% virgin ptfe pipe thread sealing tapes!"; and offering "Free! Private label on every roll for first time orders."

*Id*. at *1–2.

In support of its motion, American Copper attached a report from its expert witness, Robert Biggerstaff. *Id*. at * 2. The report stated that, based on Biggerstaff's review of B2B's fax records, "a total of 10,627 successful transmissions of a complete fax [i.e., the Lake City advertisement] were successfully sent to and received by 10,627 unique fax numbers." *Id*.

Lake City opposed American Copper's motion for class certification. *Id*. In July 2012, the district court rejected all of Lake City's arguments and certified the class as formulated by American Copper. *Id*. The district court also appointed class counsel and ordered the preparation of a notification form to be sent to class members. *Id*.

Lake City then petitioned the Sixth Circuit for permission to appeal the class-certification order. *Id*. After concluding that interlocutory review was not warranted, the Sixth Circuit denied Lake City's petition. *Id*. American Copper then moved for summary judgment in the district

court. *Id*. The district court subsequently granted American Copper's motion for summary judgment. *Id*. Explaining that the TCPA is "essentially a strict liability statute," the district court rejected Lake City's argument that it should not be held liable under the TCPA because B2B had actually transmitted the advertisements. *Id*. The district court was likewise unpersuaded by Lake City's contention that summary judgment was inappropriate due to the absence of proof regarding how many of the Lake City advertisements had actually been printed by recipients. *Id*. Nor did the district court find any merit in Lake City's argument that summary judgment would lead to its bankruptcy, noting that Lake City's ability (or inability) to pay a judgment was irrelevant at the summary-judgment stage of the case. *Id*. After the district court entered an amended judgment in favor of American Copper and the class-action plaintiffs in November 2013, Lake City and Meeder appealed. *Id*. The Sixth Circuit affirmed the district court's class definition on appeal. *Id*. at *3–5.

The Court has carefully reconsidered its class action ruling in light of the remand orders from the Sixth Circuit and the *American Copper* decision. For the reasons stated below, the Court again denies the motion for class action.

Sandusky Wellness's motion for reconsideration summarily states that "[t]he uncontrovertible evidence is that *none* of the faxes sent by Defendants here contained compliant opt out notice." (Doc. No. 47, p. 1). Sandusky Wellness criticizes this Court in its reply brief to the motion for not addressing the argument that the lack of compliant opt-out notice is an independent TCPA violation that can be determined classwide. (Doc. No. 50, p.3). What Sandusky Wellness has overlooked is that this Court has not ruled upon the question of whether the notice on the fax in question violates the TCPA. In their motion for reconsideration and

8

subsequent reply brief, Sandusky Wellness simply assumes that the notice is a violation of the TCPA. Whether the notice, in fact, is a violation of the TCPA needs to be briefed by the parties. The Court will not consider granting class certification until this issue is resolved. To do so would be to grant a certification on a class where the notice, in fact, may not violate the TCPA.

Sandusky Wellness also seeks to represents all persons who may have received a fax "on or after September 5, 2008." (Doc. No. 33-1, p. 10). This time period has not been briefed or discussed by the parties. The Court recognizes that Sandusky Wellness wishes to reach back to the limits of the statute of limitations in order to represent as many people as possible. However, the time period still needs to be argued by the parties.

## Conclusion

Accordingly, the motion for reconsideration (Doc. 47) is denied as moot. Sandusky Wellness shall have until August 28, 2014 to brief the issues of whether the opt-out notice it received from the Defendants violates the TCPA and why the Court should allow the time period of the class to include all persons who may have received the fax in question "on or after September 5, 2008." By September 18, 2014, the Defendants shall file a brief arguing why the opt-out notice does not violate the TCPA and why the class should not concern the time period in question. On or before October 2, 2014, Sandusky Wellness shall file a reply brief.

IT IS SO ORDERED.

   S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE