IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

SANDUSKY WELLNESS CENTER, LLC, )
an Ohio limited liability company, )
individually and as the representative of a )
class of similarly-situated persons, )
                                                                                 )
                                    Plaintiff, )    No.  12-CV-2257-DAK
                                                                                 )
                  v. )    Judge David A. Katz
                                                                                 )
WAGNER WELLNESS INC., ROBERT )
WAGNER, and JOHN DOES 1-10, )
                                                                                 )
                                Defendants.    )

**PLAINTIFF'S MOTION REQUESTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**

Plaintiff, Sandusky Wellness Center, LLC ("Plaintiff"), on behalf of itself and a class of similarly-situated persons (identified herein as the "Settlement Class"), pursuant to Fed. R. Civ. P. 23 (e), respectfully requests that the Court enter an order (1) preliminarily approving the parties' proposed class action Settlement Agreement (the "Agreement") attached hereto as Exhibit A, (2) preliminarily approving the form of Class Notice attached as Exhibit 2 to the Agreement and approving its dissemination to the Settlement Class, and (3) setting dates for opt-outs, objections, and a fairness hearing to take place not sooner than 120 days after the Preliminary Approval Order is entered.

A proposed Preliminary Approval Order is attached as Exhibit 1 to the Agreement and also as Exhibit B to this motion and will be submitted to the Court electronically.

**I.      Background of the litigation.**

1.      Plaintiff's Complaint alleges that Defendants, Wagner Wellness Inc. and Robert Wagner ("Defendants"), faxed unsolicited advertisements to Plaintiff and others in violation of

the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). The action seeks statutory damages.

2. The parties have engaged in substantial written and oral discovery and briefing, including an interlocutory appeal.

3. Based upon discovery and analysis of records, Plaintiff has determined that Defendant successfully sent facsimile advertisements to at least 125,373 unique fax numbers between January 25, 2012 and May 30, 2012.

4. Defendants have denied liability based on a variety of legal and factual arguments. Without waiving these or any of its other arguments, after and as a result of a mediation presided over by the Hon. Stephen Neel (Ret.) of JAMS, Defendants have agreed to settle on the terms in the Agreement.

5. Defendants and their insurer, Old Dominion Insurance Company, have agreed to make a total of up to $7,650,000.00 available on a common fund basis to fund the settlement, which shall be available to pay class members who submit valid claims as defined in the Settlement Agreement, to pay fees and costs to Plaintiff's counsel, to pay an incentive award to Plaintiff, and to pay all reasonable costs of notifying the Class and administering the settlement (the "Settlement Fund").

6. As Defendants lack assets to pay a settlement or a judgment in this matter other than through their liability insurance, the Settlement Fund is being provided by Old Dominion, which has denied that coverage exists and has filed a declaratory judgment action in the Erie County Court of Common Pleas, Case No. 2013-CV-322 (the "Coverage Action"). In that action, Old Dominion contends that its policies do not cover Defendants' actions. It also contends that, if coverage does apply, the applicable policy limits are $4 million as opposed to $8

million. Nonetheless, the Settlement Fund represents nearly all of the maximum policy limits available.

7. The settlement notice includes a claim form that permits potential class members to submit claims for cash payments by identifying themselves as members of the Settlement Class—providing their names and addresses and confirming that they owned the fax number in question at the relevant time—and it does not require them to remember or establish receiving one or more of the so-called "junk faxes" in the past. The settlement permits them to recover money without having to prove-up their claim in any way, as they must simply identify themselves as the owner of one of the relevant fax numbers at the time to establish their right to be mailed a check.

## II. Summary of the settlement.

8. If approved by the Court, the parties' settlement agreement would resolve this action, as set forth in the Settlement Agreement. Plaintiff, Defendants, and Old Dominion reached the agreement after reviewing and analyzing the legal and factual issues presented by this action and the Coverage Action, the risks and expenses involved in pursuing the lawsuit and the Coverage Action to their respective conclusions, the likelihood of protracted litigation here and in the Coverage Action, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, Plaintiff and Defendant agreed to and executed the Agreement.

9. The key terms of the Agreement are as follows:

    a. <u>Certification of a Settlement Class</u>. The Parties stipulate to certification pursuant to Rule 23(b)(3) of a Settlement Class defined as follows: "All persons who from September 5, 2008 to June 25, 2015, were (1) sent unsolicited

3

facsimile messages from or on behalf of Defendants, or (2) sent telephone facsimile messages inviting attendance at a Physicians Wellness and Weight Loss Program or advertising any other product or service which did not display a proper opt-out notice." Excluded from the Settlement Class are (a) Wagner Wellness Center, Inc. and its present and former officers, directors, employees, shareholders, insurers, and their successors, heirs, assigns, and legal representatives; (b) Robert Wagner; and (c) the Court and its officers. *See* Agreement, Ex. A, ¶ 3.

b. <u>Class Counsel and Representative Plaintiff</u>. The parties have agreed that Plaintiff is the Class Representative and that Brian J. Wanca is Class Counsel. *Id.*

c. <u>Monetary Relief to the Members of the Settlement Class and Potential *cy pres* Award</u>. Defendants and Old Dominion have agreed to make a total of up to $7,650,000.00 available to fund the settlement. Each of the class members who submits a timely and valid claim form will be mailed a check for their *pro rata* share of the Settlement Fund, up to $61.02 ($7,650,000.00 divided by the 125,373 class members). *Id.*, ¶¶ 5, 8.

d. <u>The Settlement Administrator.</u> A professional third-party class action settlement administrator, Class-settlements.com, shall serve as the Settlement Administrator (the "Settlement Administrator") who will administer the Settlement Class notice, and assist the class members in completing Claim Forms and payment of claims described below. The Settlement Administrator will be compensated out of the Settlement Fund. *Id.*, ¶ 6.

  e. <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile, or if unsuccessful after three attempts, by mail. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail. *Id.*, ¶ 7 and Ex. 2 thereto.

  f. <u>Settlement Class Opt Out Rights.</u> Any class member may seek to be excluded from this case and the settlement by opting out of the Settlement Class within the time period set by the Court. Any member who opts out of the Settlement Class will not be bound by any of the Court's orders or the terms of the Agreement and, therefore, will not be entitled to any of the benefits set forth in the Agreement. *Id*.

  g. <u>Release</u>. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Defendants and Old Dominion and the other released parties. *Id.*, ¶ 13.

  h. <u>Creation and Distribution of the Settlement Fund</u>. Defendants and Old Dominion will make the Settlement Fund available to settle this case; to pay claims (and if necessary, *cy pres*), to pay the incentive awards, and to pay Plaintiffs attorneys' fees and expenses. *Id.*, ¶ 5. Defendants and Old Dominion are not required to place any portion of the Settlement Fund into a separate bank account. Any portion of the Settlement Fund that is not paid to claiming class members, to the Class Representative, to Class Counsel, to notify the Class, or to a third-party claims administrator shall revert to Defendant. *Id*.

        i.        <u>Class Representative Award and Attorney's Fees and Costs</u>. Class Counsel will ask the Court to approve the Parties' agreement to pay $15,000 from the Settlement Fund to Plaintiff as an incentive award for serving as the Class Representative. *Id.*, ¶ 10. Additionally, Class Counsel will ask the Court to approve payment of attorneys' fees to Class Counsel equal to one third of the Settlement Fund ($2,550,000.00), plus reasonable out of pocket expenses, including the cost of the Settlement Administrator, not to exceed $115,000.00. *Id*. Defendants will not object to a request for these amounts. *Id*.

**III.**    **The Court should grant preliminary approval to the settlement.**

    **A.**    **The proposed settlement is within the range of possible approval**

10.    A district court's review of a proposed Class Action Settlement is typically a two-step process. *In re Inter-Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001). The first step is to hold a preliminary fairness hearing prior to notifying the class members about the proposed settlement. *Tennessee Ass'n Health Mntce. Orgs. v. Grier,* 262 F.3d 559, 565-66 (6th Cir. 1983). The purpose of that preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1006, 1124 (7th Cir. 1979). *See also In re Inter-Op,* 204 F.R.D. at 350.

    **B.**    **Standard for judicial evaluation and approval.**

11.    A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is

particularly true in class actions. *See Int'l Union,* 477 F.3d at 632 (noting "the federal policy favoring settlement of class actions"). If the Court finds that the settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to notify the class members about the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

### C. Factors considered in determining whether a settlement is fair, reasonable, and adequate.

12. Ultimately, in determining whether the settlement is fair, reasonable, and adequate, the trial court considers the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and the class representatives; (6) the reaction of absent class members; and (7) the public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at *12 (N.D. Ohio 2011), *citing Int'l Union,* 497 F.3d at 632.

13. At the preliminary approval stage, "only certain of these factors are relevant to the fairness inquiry." *Smith v. Ajax Manethermic Corp.,* 2007 WL 3355080 at *6 (N. D. Ohio 2007). "In its preliminary assessment of the fairness of the proposed settlement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Id., citing In re Inter-Op,* 204 F.R.D. at 351.

14. In this case, these factors show that the proposed settlement is within the range of possible approval. Therefore, the Court should permit the parties to notify the Settlement Class

and the Court should schedule a fairness hearing to determine whether to finally approve the settlement.

15. The Agreement resulted from arm's-length negotiations between experienced counsel, aided by an impartial, experienced mediator, with an understanding of the strengths and weaknesses of their respective positions in this case. "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op,* 204 F.R.D. at 351.

16. Defendants and Old Dominion have agreed to pay each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form their per fax, *pro rata* share of the Settlement Fund.

17. This settlement is an excellent outcome and result for the Class. Defendants raised defenses. Moreover, Defendants lack the assets to pay a class-wide judgment assessed at $500 times the at least 496,525 facsimiles at issue ($248,262,500.00). It has, at most, $8 million in insurance coverage. And Old Dominion has raised coverage defenses. Without the settlement, Defendants ultimately might go bankrupt and not pay, and the Class might recover substantially less.

18. Class action litigation is time consuming in terms of both pretrial and trial work. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent,* 2011 WL 3862363 at *16, *quoting In re Austrian and German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S. D. N. Y. 2000).

19. This case is no exception. Defendants have denied liability and have agreed to settle to avoid the distraction and expense of defending protracted litigation and exposure to higher liability. There are risks attendant to further litigation in this matter, and substantial delay

and expense. The decision to settle is reasonable in light of the risks of continued litigation, in this case and the Coverage Action. Here, the parties would brief one or more motions for summary judgment, then there might be a trial, and almost certainly an appeal. In addition to the risk of loss, continued litigation would delay the class members' receipt of any recovery.

20. Each class member who does not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment in the amount of their *pro rata* share of the Settlement Fund, and Defendants have also agreed to pay the attorneys fees and expenses of Class Counsel for conferring that benefit upon each class member.

21. Plaintiff's attorneys believe this settlement is fair, reasonable, and adequate. Plaintiff's attorneys have litigated TCPA class actions since 2003. They have been appointed class counsel in several such cases pending in this and other District Courts. *See, e.g., American Copper & Brass v. Lake City Industrial Prods., Inc.*, 757 F.3d 540 (6th Cir. 2014); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012); *Imhoff Inv., Inc. v. Sammichaels, Inc.*, 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*, 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 12 CV 2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, 3:13-CV-489, 2014 WL 2946421 (W.D. Ky. June 30, 2014); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299 (D. N.J. 2013); *A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC*, No. 12-21695, 2013 WL 3463489 (S.D. Fla. July 3, 2013); *A & L Indus., Inc. v. P. Cipollini, Inc.*, 12-07598, 2013 WL 5503303 (D. N.J. 2013); *CE Design v. Cy's Crab House North, Inc., et al.*, 259 F.R.D. 135 (N.D. Ill. 2009),

*app. denied* (Sept. 9, 2009); *CE Design, Ltd. v. King Architectural Metals, Inc.*, No. 09 C 2057, 2010 WL 5146641, *6 (N.D. Ill. Dec. 13, 2010) (same), *reversed on other grounds, CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *G.M. Sign, Inc. v. Group C. Comm'n, Inc.*, 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010); *Green v. Service Master On Location Services Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill., June 22, 2009); *Hinman v. M & M Rentals*, 545 F.Supp.2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008); *Paldo Sign v. Topsail*, No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp.2d 894 (N.D. Ill. 2010).

22. Based upon the foregoing, and the judgment of experienced class counsel, Plaintiff requests that the Court preliminarily approve the settlement.

**IV. At final approval, Class Counsel will ask the Court to approve Defendants' agreement to pay Class Counsel's fees and expenses, and an award to Plaintiff, pursuant to the Agreement.**

23. At final approval, Class Counsel will request that the Court approve Defendants' agreement to pay attorney's fees equal to one-third of the Initial Settlement Fund. This amount is within the approved range in class actions. *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th

Cir. 1998) (awarding 38% of the fund as fees); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) (approving 30% of amount made available).[1]

24. It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See also Brent,* 2011 WL 3862363 at *19. The U.S. Supreme Court has noted that in settlement fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Moreover, the percentage of the fund method in a common fund settlement is appropriate as it "enhances efficiency" and "it better approximates the workings of the marketplace." *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F. 295, 307 (1st Cir. 1995).

25. The attorneys' contingent risk is an important factor in determining the fee award. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974); *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). The attorneys who create a benefit for class members are entitled to compensation for their services. *Brent,* 2011 WL 3862363 at *19.

26. In *Boeing*, the U.S. Supreme Court explained as follows:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. … [T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." [444 U.S. at 478-479.]

27. There, as here, "[t]o claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is

---

[1] *See also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008).

11

a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480. *See also Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) (holding that the district court abused its discretion by calculating fees based strictly on the actual recovery, expressly rejecting the idea that basing the award on the Available Benefit would create a windfall for class counsel); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir.1999), *cert. denied,* 530 U.S. 1223, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000); *Williams v. MGM–Pathe Commun. Co.,* 129 F.3d 1026 (9th Cir.1997) (reversing district court award of 33 percent of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million)); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 806 (E.D.Wis.2009) (relying on *Boeing* in awarding 33 percent of the available fund, a fee award that exceeded the amount actually claimed).

28. In *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), the U.S. Court of Appeals explained, "In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"

29. The percentage requested falls within the approved range in class actions generally. *See Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 503 (E.D.Mich.2000) (approving one third fee); *Johnson v. Midwest Logistics Systems, Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (approving fees of 33% of the settlement fund); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (same); *In re Telectronics Pacing Sys.,* 137 F.Supp.2d 985, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility,* 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds,* 24 Fed.Appx 520 (6th Cir. 2001) ("[t]ypically, the

percentage awarded ranges from 20 to 50 percent of the common fund"); *In re Cincinnati Gas & Elec.,* 643 F.Supp. 148, 150 (S.D.Ohio 1986); *In re Cincinnati Microwave,* No. C–1–95–905 (30% plus expenses); *Howes v. Atkins,* 668 F.Supp. 1021 (E.D.Ky. 1987) (40%); *Adams v. Standard Knitting Mills, Inc.,* [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,377, 1978 U.S. Dist. LEXIS 20317 (E.D.Tenn. Jan. 6, 1978) (35.8%); *Bennett v. Roark Capital Group, Inc.*, Case No. 2:09-cv-00421, 2011 WL 1703447 at *2 (D. Maine, 2011) (33% of fund "reflects a fee that is customary."); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees).[2] "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 363 (7th Cir. 1998) (affirming award of 38% of $20 million), and citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

30. Moreover, that percentage falls within the market rate in settlements of TCPA cases, including cases in this Court and other Sixth Circuit courts. *See, e.g., Sandusky Wellness*

---

[2] *See also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago,* No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) (39% fee); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (receivership case) (38% fee); *In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) (33.3% fee); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) (Norgle, J.) (33.3% fee); *Liebhard v. Square D Co.,* No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.) (33.3% fee); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.) (33.3% fee); *In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) (33% fee); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (33% fee).

*Center, LLC v. Heel, Inc.*, 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) (one third of fund); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 10-CV-253 (W.D. Mich. July 30, 2015) (Doc. 245) (same); *Jackson's Five Star Catering, Inc. v. Beason*, 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *Avio, Inc. v. Creative Office Solutions, LLC*, 10-CV-10622 (E.D. Mich. Dec. 10, 2012) (Doc. 31) (same); *Creative Montessori Learning Center, LLC v. Ashford Gear, Inc.*, 09-CV-3963 (N.D. Ill. Feb. 27, 2015) (Doc. 366) (same); *Hinman v. M & M Rentals, Inc.*, 06-CV-1156 (N.D. Ill. Oct. 24, 2014) (Doc. 264) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, 10-CV-7995 (N.D, Ill. Mar. 4, 2014) (Doc. 243) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 10-CV-331 (E.D. Wis. July 19, 2013) (35% of the settlement fund); *Bailey Bros. Plumbing, Heating and Air Conditioning, Inc.*, 10-CV-80 (W.D. Okla. Nov. 20, 2012) (Doc. 97) (one third of settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Doc. 100) (same); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Doc. 140) (same); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Doc. 33) (same).

31. Defendants have agreed to pay Class Counsel a fair and reasonable amount equal to one-third of the Settlement Fund, plus reasonable out-of-pocket expenses. Class Counsel undertook this case on a contingency basis, represented the Class in the declaratory action on a contingency basis, and achieved an excellent result in a fair and efficient manner.

32. Class Counsel resolved this case through unique capabilities from their years of experience in these types of cases. With skills and resources from years of litigating these types of cases, Class Counsel were able to identify all class members and move for class certification. As indicated above, Class Counsel have been litigating TCPA class actions and insurance

coverage actions about TCPA claims since 2003, and have litigated class actions for many more years.

33. Obviously, the purpose of a class action lawsuit is to provide a benefit to Class members, not to litigate for the sake of litigating. Class Counsel delivered significant benefits to the Class in the face of numerous potentially fatal obstacles. Tested by the potential infirmities of the case itself, there is little doubt that Class Counsel undertook a significant risk here and the fee award should reflect that risk. Class Counsel faced a significant risk of nonpayment, not only for their time but also for their out-of-pocket costs. If the Court finds that the settlement is fair, reasonable, and adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to one-third of the Settlement Fund plus out of pocket litigation expenses, including the to-be-incurred cost of settlement administration.

34. At final approval, Class Counsel will also request that the Court approve Defendants' payment to Plaintiff in the amount of $15,000.00 from the Settlement Fund for serving as the class representative.

35. Such awards are appropriate to reward class representatives who have pursued claims on behalf of the class. *Moulton v. U. S. Steel Corp.,* 581 F. 3d 344, 351-52 (6th Cir. 2009); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

36. Plaintiff was the catalyst of this case. Plaintiff filed and pursued the action. Plaintiff responded to discovery and stayed involved and informed. Its efforts greatly benefited

the Class. Class Counsel requests that the Court award Plaintiff a payment of $15,000.00 for its efforts on behalf of the class. Other judges have approved similar awards in TCPA cases. *See Sandusky Wellness Center, LLC v. Heel, Inc.*, 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (Doc. 95) ($15,000.00); *Jackson's Five Star Catering, Inc. v. Beason*, 10-CV-10010 (E.D. Mich. Apr. 15, 2015) (Doc. 90) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, 10-CV-7995 (N.D, Ill. Mar. 4, 2014) (Doc. 243) (same).

### V. The Court should approve notice to the Settlement Class.

37. The parties propose to issue notice by facsimile, and if unsuccessful, by mail to the Settlement Class. A copy of the proposed notice is attached as Exhibit 2 to the Agreement.

38. Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F.2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

39. Rule 23(e)(i)(B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice by sending it to the fax numbers in question. The simple, one-page claim form (to be chosen by the Court as provided in Section VI below) will be delivered with the notice, so that members of the Class can complete a claim form and return it immediately by fax or mail as they choose.

40. The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who

requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Here, the notice satisfies these requirements.

41. The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, the Court should approve the proposed notice and authorize its dissemination to the Class.

**VI. The Court should schedule a final fairness hearing.**

42. Plaintiff requests that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the Agreement.

**VIII. Conclusion.**

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing. The final approval hearing should be on a date no sooner than 120 days after the entry of the preliminary approval order.

Respectfully submitted,

s/ Brian J. Wanca
    Brian J. Wanca

Brian J. Wanca
Ryan M. Kelly
David M. Oppenheim
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Scott D. Simpkins
CLIMACO, WILCOX, PECA, TARANTINO
 & GAROFOLO CO., LPA
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 217/621-8484

18

## CERTIFICATE OF E-FILING AND SERVICE

  I hereby certify that on October 6, 2015, I electronically filed the foregoing *Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class* using the ECF System, which will send notification of such filing to all counsel of record.

              /s/ Brian J. Wanca